UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

MILTON SPOKOJNY,

       Plaintiff,

v.

HILLARD HAMPTON, ET AL

       Defendants.
_____/

Case No.  12-11402

SENIOR UNITED STATES DISTRICT JUDGE
ARTHUR J. TARNOW

MAGISTRATE JUDGE  MICHAEL J. HLUCHANIUK

**ORDER GRANTING DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT [52]**

Before the Court is Defendants' Motion for Summary Judgment [52], Plaintiff's Response [57], and Defendants' Reply [61].  For the reasons that follow, Defendants' Motion for Summary Judgment [52] is **GRANTED** in its entirety.

**STATEMENT OF FACTS**

Plaintiff worked as City Attorney for Inkster from 1982 until 2011.  During Plaintiff's tenure there was no competitive bidding for Inkster's legal work until 2011. In 2011, City Council authorized Requests for Proposals (RFP) for the City's then-current service contracts, including legal.  As a result of the RFP process, Inkster retained the Allen Brothers Law Firm as City Attorney.  The Allen Brothers' Response to the RFP indicated that they could provide more comprehensive legal services for less money than Plaintiff's historically had.

A the time City Council voted to terminate Plaintiff, they expressed serious concerns about Plaintiff's performance. While Plaintiff was City Attorney, sensitive documents were leaked to Court Officer Michael Greene. After Plaintiff's termination, Michael Greene filed a lawsuit against Plaintiff, amongst others, alleging that Plaintiff had filed a false police report. As a result of this situation, City Council were concerned that Plaintiff's loyalties were improperly divided between Council and certain 22nd District Court officers.

## STANDARD OF REVIEW

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). The moving party has the burden of establishing that there are no genuine issues of material fact, which may be accomplished by demonstrating that the nonmoving party lacks evidence to support an essential element of its case. Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). A genuine issue for trial exists if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). The Court may not consider unsworn statements when ruling on a motion for summary judgment. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 158 n.17 (1970).

## ANALYSIS

**I. 42 U.S.C. §§ 1981; 1983**

Title 42 U.S.C. § 1981 protects the right to make and enforce contracts free from interference based on race and § 1983 provides the mechanism to enforce that right in litigation against state actors. In order to establish a claim of racial discrimination under § 1981, Plaintiff must show that "(1) he belongs to an identifiable class of persons who are subject to discrimination based on their race; (2) Defendants intended to discriminate against him on the basis of race; and (3) Defendants' discriminatory conduct abridged a right enumerated in section 1981(a)." *Amini v. Oberlin College*, 440 F.3d 350, 358 (6th Cir. 2006). Defendants argue that Plaintiff cannot establish the second element: that they intended to discriminate against him on the basis of race. Intent to discriminate may be proven by either direct or circumstantial evidence. *Id.*

### A. Direct Evidence of Discriminatory Intent

Direct evidence is proof that, if believed, requires "the conclusion that unlawful discrimination was at least a motivating factor in the employer's actions." *Kuhn v. Washtenaw County*, 709 F.3d 612, 624 (6th Cir. 2013). Direct evidence of discrimination may not be based on rumors, conclusory allegations, or subjective beliefs. *Hein v. All America Plywood Co., Inc.*, 232 F.3d 482, 488 (6th Cir. 2000). It cannot be based on vague, ambiguous, or isolated remarks. *See Phelps v. Yale Sec.,*

*Inc.*, 986 F.2d 1020 (6th Cir. 1993) (finding no prima facie showing of age discrimination where the plaintiff's supervisor two times said that the plaintiff was too old to continue at her prior secretarial position because those were only isolated and ambiguous comments). Finally, direct evidence must establish that the employer was predisposed to discriminate on the basis of race and "that the employer acted on that predisposition." *Hein*, 232 F.3d at 488.

Defendants argue that under the applicable legal standards, there is no direct evidence of racial discrimination. Plaintiffs argue that the record contains several instances of direct evidence of discrimination.

First, Plaintiff points to Councilman Crump's testimony that he believed Inkster had an Equal Opportunity Ordinance in effect at the time Plaintiff was terminated. In fact, the Ordinance had been terminated as a result of a another lawsuit. Councilman Crump testified that he voted to hire the Allen Brothers Firm because of their ability to handle many different legal issues and his belief that the Allen Brothers Firm would charge less than Plaintiff. The fact that Crump believed the Equal Opportunity Ordinance was in effect, but voted based on the Allen Brothers' expertise and cost does not demonstrate that Crump was predisposed to discriminate on the basis of race and acted on that predisposition. *Hein*, 232 F.3d at 488. There is no direct evidence that Crump voted on the basis of the defunct Ordinance.

Second, Plaintiff asserts that Defendant Mayor Hampton utilized a "voting block" comprised of City Council members Crump, Canty, Hendricks, Wimberly, and Hampton himself to terminate Plaintiff. Plaintiff argues that because the voting block cannot explain how Inkster abandoned the Equal Opportunity Ordinance that constitutes direct evidence of racial discrimination against him. Council members lack of knowledge about the mechanism of non-enforcement of the Equal Opportunity Ordinance, however, does not demonstrate that they were predisposed to discriminate on the basis of race and acted on that predisposition. Hampton worked with Council for thirteen years before Plaintiff was terminated. Plaintiff's block theory is, therefore, premised on the presumption that Hampton engaged in a conspiracy for over a decade to racially discriminate against Plaintiff. More likely, as is usually the case when a new regime takes over, as City Council's composition changed, they hired different contractors.

Third, Plaintiff testified that he "believe[d]" that Hampton stated in council meetings that he wanted to hire more black contractors and that constitutes direct evidence that Defendants racially discriminated against Plaintiff when they terminated him. Plaintiff could not say whether Hampton made those statements while he was mayor or just a Council member or when he said them. Even if the Court takes as true Plaintiff's assertions of Hampton's statements, at best they constitute conclusory allegations, vague, ambiguous, or isolated remarks. *Hein*, 232 F.3d at 488; *Phelps*,

986 F.2d 1020. In *Phelps*, an employer's statements that the plaintiff *personally* was too old did not constitute direct evidence of age discrimination and were only isolated and ambiguous comments. Here, then, even taking as true Plaintiff's assertion that Hampton had a general preference to hire black city contractors, that does not constitute direct evidence that Defendants terminated Plaintiff as City Attorney because he was white.

Finally, Plaintiff asserts that Ann Capela stated that Defendant Hampton was racially biased. However, Capela's statement is unsworn and the Court may not rely on it. *Adickes*, 398 U.S. at 158 n.17.

### B. Circumstantial Evidence of Discriminatory Intent

#### 1. Prima Facie Case of Discrimination

Absent direct evidence of discrimination, claims brought pursuant to 42 U.S.C. § 1981 are subject to the tripartite *McDonnell Douglas* burden-shifting framework. *White v. Baxter Healthcare Corp.*, 533 F.3d 381, 391 (6th Cir. 2008); *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). Plaintiff bears the initial burden of establishing a prima facie case of discrimination by a preponderance of the evidence. *Texas Dept. of Community Affairs v. Burdine*, 450 U.S. 248, 253 (1981). To establish a prima facie case of employment discrimination, a plaintiff must demonstrate that: (1) he is a member of a protected class; (2) he was qualified for his job; (3) he suffered an adverse employment decision; and (4) he was replaced by a person outside the

protected class or treated differently than similarly situated non-protected employees. *Arendale v. City of Memphis*, 519 F.3d 587, 603 (6th Cir.2008). Although Defendants argue that Plaintiff cannot prove he was qualified to be City Attorney, for the sake of this Order, the Court will presume Plaintiff was so qualified.

## 2. Legitimate Reasons for Termination and Pretext

Presuming Plaintiff has made a prima facie case for discrimination, the burden shifts to Defendants to articulate legitimate, non-discriminatory reasons for Plaintiff's discharge. *McDonnell Douglas*, 411 U.S. 792. The burden then shifts back to Plaintiff to prove that the reasons submitted by the employer were pretext. *Id*. In order to show pretext, Plaintiff may show that the asserted reasons (1) had no basis in fact; (2) did not actually motivate the decision to terminate; or (3) were insufficient to justify the decision to terminate. *Hopson v. DaimlerChrysler Corp.*, 306 F.3d 427, 434 (6th Cir. 2002).

Defendants assert that their decision to terminate Plaintiff was based on their impression that Plaintiff may have breached confidentiality and refused to obtain financial documents on the basis of divided loyalties. Defendants assert that their decision to hire the Allen Brothers Firm's was based on the Firm's abilities to provide more attorneys, more comprehensive legal services, and for less money.

Plaintiff's arguments that Defendants' reasons are pretextual are threefold. First, Plaintiff argues that Defendants falsely believed that he was a solo-practitioner,

but in fact his son and brother were of counsel to his practice. Second, Plaintiff also disputes that the Allen Brothers Firm was capable of handling more areas of law than him. Finally, Plaintiff disputes that the Allen Brothers provide more affordable services than him. Ultimately, Plaintiff cannot create any question of fact that Defendants' reasons had no basis in fact, did not actually motivate the decision to terminate, or were insufficient to justify the decision to terminate. *Hopson*, 306 F.3d at 434.

First, taking the facts as most favorable to Plaintiff, even if he had two additional of counsel attorneys, he was competing against a six person firm with one attorney of counsel. There is no genuine question of material fact that The Allen Brothers Firm had more capacity than Plaintiff, so this reason was not pretextual.

Second, Plaintiff argues that Defendants were unaware of what legal services he could provide. However, the testimony that Plaintiff cites does not actually support this assertion. First, Hampton testified that Plaintiff could not handle contract work and that even though he could handle litigation, it was often farmed out. Hampton further testified that, although Plaintiff never explicitly said he could not handle risk management, Plaintiff attended City Council meetings where the decisions to farm that work out were made. [56, ex. C. At 39, 44]. Second, Canty testified that labor law had not been handled by Plaintiff when he was City Attorney and that Canty was unaware whether Plaintiff could handle labor law. [56, ex. D, at 44–46]. None of this

testimony supports Plaintiff's assertion that Defendants did not know what services Plaintiff could provide. The Council members testified that they did not know whether Plaintiff could handle two specific types of law and that those had been farmed out with Plaintiff's knowledge. That testimony does not mean that Defendants "had no idea what services Spokojny could provide." Further, even assuming Plaintiff has expertise in labor law and risk management, he was not doing that work, adding to the hourly legal expenses for Inkster. On the other hand, Defendants knew for certain that the Allen Brother had the capacity and expertise to handle both of these areas of law and that it would be covered under their fixed fee cap. There is no question of fact that Defendants' reliance on the Allen Brothers' capacity and expertise was not pretextual.

Finally, Plaintiff argues that the Allen Brothers were not offering more affordable services than him. This is simply not true. In 2010, Inkster paid $143,961 for legal fees with Plaintiff as the City Attorney. The Allen Brothers' Response to RFP proposed a $135,000 cap for all legal fees. [52-10 at 3]. Although the fee structure between the two City Attorney options—Plaintiff or the Allen Brothers—differed, the bottom line is that at the time City Council made its decision to hire the Allen Brothers there is no question of fact that the Allen Brothers' proposal offered the more affordable option. Plaintiff also argues that Inkster in fact ended up paying the Allen Brothers more than the $135,000 cap. This argument fails. Things

that could not have been known at the time City Council made its decision to retain the Allen Brothers are irrelevant to questions about whether race played a role in City Council's decision. Further, the only reason that the $135,000 cap did not stand is because the Allen Brothers expanded the class of services it contemplated handling. Specifically, after they were retained, Inkster decided to use the Allen Brothers for litigation as well. [61] at 7. Under the original $135,000 cap proposal, Inkster was planning to farm out its litigation needs and incur additional hourly fees.

### C. Official Municipal Policy

To prevail on a claim for discrimination against a municipality, Plaintiff must show that the violation of his § 1981 right to contract was caused by a custom or policy within the meaning of *Monell v. New York City Department of Social Services*, 436 U.S. 658 (1978) and subsequent cases. *Jett v. Dallas Independent School Dist.*, 491 U.S. 701, 735–36 (1989). To be actionable, an alleged deprivation of rights must have resulted either from "policies which affirmatively command[ed] that it occur" or from "acquiescence in a longstanding practice or custom which constitutes the 'standard operating procedure' of the local governmental entity." *Id.* at 737. Plaintiff asserts three bare legal conclusions supporting his position that Inkster had a policy of discriminating against whites.

First, Plaintiff states that because City Council terminated Plaintiff, that decision constitutes a policy because Council is the ultimate decision-making authority in Inkster.  However, a single decision does not constitute a policy.

Second, Plaintiff states that Inkster's Equal Opportunity Ordinance was a discriminatory policy.  However, the Ordinance was not in effect at the time of Plaintiff's termination, nor did any Council member vote to terminate Plaintiff on the basis of the Ordinance.

Third, Plaintiff states that Inkster's decades-long tradition of preferential treatment for black employees and contractors constitutes a custom for purposes of *Monell*.  Plaintiff does not cite any facts to support this conclusion.  Further, it is disingenuous for Plaintiff to argue that Inkster has had a decades-long tradition of preferential treatment for black employees when he was the City Attorney for 29 years.

**II. Michigan Constitution of 1963 Art. I Sec. 26**

Plaintiff attempts to state a claim under Article I, Section 26 of the Michigan Constitution of 1963.  Article I, Section 26 of the Michigan Constitution of 1963, in part, states:

> (2) The state shall not discriminate against, or grant preferential treatment to, any individual or group on the basis of race, sex, color, ethnicity, or national origin in the operation of public employment, public education, or public contracting.

Defendant argues that this provision the Sixth Circuit held this provision to be unconstitutional in *Coalition to Defendant Affirmative Action, Integration, and Immigrant Rights and Fight for Equality by any Means Necessary v. Regents of the University of Michigan*, 701 F.3d 466, 470 (6th Cir. 2012) (cert. granted *Schuette v. Coalition to Defend Affirmative Action*, 133 S.Ct. 1633 (2013)). Plaintiff argues that *Coalition* only held Art. I, § 26 unconstitutional as it applies to public universities and colleges. Ultimately, for the reasons explained above, Plaintiff cannot demonstrate discrimination and so he cannot state a claim under Article I, Section 26 of the Michigan Constitution of 1963.

### III. Retaliation For Protected Activity

Plaintiff claims that Defendants violated his rights under 42 U.S.C. § 1981 by retaliating against him. Plaintiff argues that Defendants refused to provide him with a defense in a lawsuit brought by Michael Greene in retaliation for filing the case at bar.

#### A. Prima Facie Case, Proffered Reasons, and Pretext

Section 1981 claims are analyzed under the same framework as Title VII claims. Plaintiff relies on circumstantial evidence in his attempt to show retaliation, so the Court will analzye his claims under the *McDonnell Douglas* burden-shifting framework. To establish a prima facie case of retaliation, Plaintiff must show that: (1) he engaged in a protected activity; (2) Defendants were aware he engaged in that

activity; (3) Defendants took an adverse employment action against Plaintiff; and (4) there was a causal connection between the protected activity and the adverse action. *Imwalle v. Reliance Medical Products, Inc.*, 515 F.3d 531, 544 (6th Cir. 2008). Defendant argues that Plaintiff cannot establish element four, causation. Plaintiff responds that temporal proximity, pattern and practice, and pretext demonstrate causation here.

Very close temporal proximity can constitute circumstantial evidence of causation. *Taylor v. Geithner* 703 F.3d 328, 339 (6th Cir. 2013). Defendants in this lawsuit were served on April 24, 2012. Defendants were notified of Greene's lawsuit July 25, 2012. On August 8, 2012, Inkster declined to provide Plaintiff with a defense in the Greene lawsuit. The time lapse between the protected activity and the adverse action is more than three months. More than three months is not "acutely near in time," so that causation may be inferred from temporal proximity. *DiCarlo v. Potter*, 358 F.3d 408, 421 (6th Cir. 2004). Recent Sixth Circuit authority suggests that the three to four months here may be sufficient to meet the low threshold of proof necessary to establish a prima facie case of retaliatory discharge. *See Bryson v. Regis Corp.*, 498 F.3d 561, 571 (6th Cir. 2007) (explaining that three months is sufficient to show temporal proximity because "a plaintiff's burden in establishing a prima facie case is not intended to be an onerous one") (internal quotation marks and alterations omitted); *Singfield v. Akron Metro. Housing Auth.*, 389 F.3d 555, 563 (6th Cir. 2004)

(concluding that a lapse of three months is a sufficient temporal proximity to show causal connection).

However, "where some time elapses between when the employer learns of a protected activity and the subsequent adverse employment action, the employee must couple temporal proximity with other evidence of retaliatory conduct to establish causality." *Mickey v. Zeidler Tool & Die Co.*, 516 F.3d 516, 525 (6th Cir. 2008). So, while the three-plus-month lapse is circumstantial evidence of retaliation, it is not sufficient alone to establish element four, causation. Plaintiff must show that Defendants proffered reasons are pretextual or that they have a pattern and practice of discriminating against whites to establish a prima facie case of discrimination.

Where an employer has an honest belief in the nondiscriminatory basis upon which its employment decision was based, the employee cannot establish pretext. *Tingle v. Arbors at Hilliard*, 691 F.3d 523, 530–31 (6th Cir. 2012). Defendants state that they did not provide a defense for Plaintiff because the allegations in the Greene Complaint did not relate to Plaintiff's role as City Attorney. Defendants concluded this because the Greene Complaint alleged that Plaintiff filed a false police report. As a result of the police report Plaintiff filed, Michael Greene was charged with four felonies and fired. The filing of the police report had nothing to do with Plaintiff's duties as Inkster's City Attorney. Additionally, Defendants point out there was no indemnification clause in Plaintiff's employment contract as City Attorney.

Plaintiff responds that Defendants were obligated to provide him with a defense because he was named as a defendant in the Greene Complaint in his capacity as Inkster City Attorney. In fact, while Pamela Anderson was sued "individually and in her official capacity," Plaintiff was merely named in the Greene Complaint. [Pl.'s ex. T] Since Anderson was specified as being sued in her official capacity, the logical conclusion is that Spokojny was not since he was named only individually.

### B. Official Policy or Custom

Again, under Title VII analysis, to prevail on a claim for retaliation against a municipality, Plaintiff must show that the violation of his § 1981 right to contracts was caused by a custom or policy within the meaning of *Monell v. New York City Department of Social Services*, 436 U.S. 658 (1978) and subsequent cases. *Jett v. Dallas Independent School Dist.*, 491 U.S. 701, 735–36 (1989).

As evidence of policy or custom, Plaintiff cites comments allegedly made in 2010 by Council members saying that they did not want to hire someone who had previously sued Inkster for reverse race discrimination. Not wanting to hire a single person based on their litigation history with the City does not constitute a practice "so permanent and well settled as to constitute a custom or usage with the force of law." *Monnell*, 436 U.S. at 691. Further, it is unlikely that any employer would hire anyone who had previously sued them for any reason, not just racial discrimination. There

is no genuine question of material fact that Defendants did not improperly retaliate against Plaintiff.

Therefore,

**IT IS ORDERED** that Defendants' Motion for Summary Judgment [52] is **GRANTED** in its entirety.

**SO ORDERED.**

s/Arthur J. Tarnow
Arthur J. Tarnow
Senior United States District Judge

Dated: December 19, 2013