UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

MILTON SPOKOJNY,

    Plaintiff,

v.

HILLARD HAMPTON, ET AL

    Defendants.
    _____/

Case No.  12-11402

SENIOR UNITED STATES DISTRICT JUDGE
ARTHUR J. TARNOW

MAGISTRATE JUDGE  MICHAEL J. HLUCHANIUK

## ORDER DENYING PLAINTIFF'S MOTION FOR RECONSIDERATION [74]

Now before the Court is Plaintiff's Motion for Reconsideration [74]. For the reasons stated below, Plaintiff's Motion is **DENIED**.

### FACTUAL AND PROCEDURAL HISTORY

The Court relies on the facts as outlined in its previous Order [71].  This case was originally filed March 28, 2012. Defendant filed a Motion for [Partial] Summary Judgment [52] on July 29, 2013.  On December 10, 2013, the Court heard oral argument on the Motion [52]. On December 19, 2013, the Court issued an Order [71] granting Defendant's Motion for [Partial] Summary Judgment [52]. On December 31, 2013, Plaintiffs filed a Motion for Reconsideration [74] of the Order [71] granting summary judgment.

## STANDARD

Local Rule 7.1(h)(3) provides that:

> Generally, and without restricting the court's discretion, the court will not grant motions for rehearing or reconsideration that merely present the same issues ruled upon by the court, either expressly or by reasonable implication. The movant must not only demonstrate a palpable defect by which the court and the parties and other persons entitled to be heard on the motion have been misled but also show that correcting the defect will result in a different disposition of the case.

*See Hansmann v. Fid. Invs. Institutional Servs. Co.*, 326 F.3d 760, 767 (6th Cir. 2003) (A motion for reconsideration is granted only "if the movant demonstrates that the district court and the parties have been misled by a palpable defect, and correcting the defect will result in a different disposition of the case"). "A palpable defect is a defect which is obvious, clear, unmistakable, manifest or plain." *Fleck v. Titan Tire Corp.*, 177 F. Supp. 2d 605, 624 (E.D. Mich. 2001) (internal citations and quotations omitted). "The decision whether to grant reconsideration lies largely within the discretion of the court." *Yuba Natural Res., Inc. v. United States*, 904 F.2d 1577, 1583 (Fed. Cir. 1990).

## ANALYSIS

Plaintiff's Motion [74] essentially presents the same issues and arguments already ruled upon by the Court. Initially, the Court notes that the vast majority of evidence upon which Plaintiff attempts to rely is inadmissible hearsay. Evidence

presented in opposition of a summary judgment motion must set forth facts which would be admissible at trial. *Moore v. Holbrook*, 2 F.3d 697, 699 (6th Cir. 1993).

## Discrimination Claim

### I. Ann Capela's Declaration [56-11]

First, Plaintiff argues that the Court committed a palpable error by not considering Ann Capela's unsworn Declaration [56-11] that Defendant Hampton was racially biased. Plaintiff now argues that the Court should have considered Capela's Declaration [56-11] pursuant to 28 U.S.C. § 1746, which permits Courts to consider statements made under the penalty of perjury. In its previous Order [71], the Court declined to consider Capela's Declaration [56-11] because it is unsworn. The Court need not resolve whether Capela's Declaration [56-11] is formally precluded from consideration under *Coalition to Defend Affirmative Action, et al v. Regents of University of Michigan*, 701 F.3d 466 (6th Cir. 2012), *supra*, because the Declaration [56-11] consists only of conclusory accusations, hearsay, irrelevant facts, and testimony about the mindset of others. Most of the allegations in Capela's Declaration [56-11] go to her problems with Defendants, not Plaintiff's issues in this case. Capela's Declaration [56-11] clearly reveals that there were groups within Inkster City government that became entrenched against each other for various reasons. The Court refers to the following analysis in its previous Order [71] to

explain why Capela's Declaration [56-11] does not help Plaintiff:

> Even if the Court takes as true [Capela]'s assertions of Hampton's statements, at best they constitute conclusory allegations, vague, ambiguous, or isolated remarks. *Hein [v. All America Plywood Co., Inc]*, 232 F.3d at 488 [(6th Cir. 2000)]; *Phelps [v. Yale Sec., Inc.]*, 986 F.2d 1020 [(6th Cir. 1993)]. In Phelps, an employer's statements that the plaintiff personally was too old did not constitute direct evidence of age discrimination and were only isolated and ambiguous comments. Here, then, even taking as true [Capela]'s assertion that Hampton [and co-Defendants were generally racist], that does not constitute direct evidence that Defendants terminated Plaintiff as City Attorney because he was white.

Case No. 12-11402; Order [71] at 6.

## II. Inkster's Equal Opportunity Ordinance

Second, Plaintiff again presents his argument that the City of Inkster has a facially discriminatory employment policy against whites. Plaintiff first argues that Inkster's Equal Opportunity Ordinance was in effect and followed at the time of his termination on the basis of the scope of Sixth Circuit precedent. *Coalition*, 701 F.3d 466 held Inkster's Equal Opportunity Ordinance to be unconstitutionally discriminatory in the context of public education. Plaintiff attempts to differentiate *Coalition* from the case at bar. Plaintiff argues that Inkster's Equal Opportunity Ordinance was in effect as to municipalities at the time of Plaintiff's termination because *Coalition* only foreclosed application of the Ordinance as to public education. The scope of *Coalition* is irrelevant to the issue before the Court now. As

stated in the Court's previous Order [71], no Council member voted to terminate Plaintiff on the basis of the Equal Opportunity Ordinance. Whether anyone believed it was still effective is, therefore, irrelevant to Plaintiff's claim. Further, Defendant Hampton's testimony indicates that he believed the entire Equal Opportunity Ordinance was defunct at the time of Plaintiff's termination because he referred to it in the past tense. See [52-5] at 8 ("regarding a minority ordinance we once had on our books. . ."). Additionally, Councilpeople Canty and Williams likewise testified that, to their knowledge, the Ordinance was defunct. *See* [52-11] at 17–18; [57-2] at 15–16. In any case, the Court does not need to resolve the scope of *Coalition* in order to rule in this case.

    Plaintiff next argues that Inkster's Equal Opportunity Ordinance was in effect and followed at the time of his termination on the basis of the language of the City Attorney RFP email. The inclusion of boilerplate minority business participation language in the RFP email does not demonstrate that the Ordinance was actually in effect or followed. The same email contained a separate "Women-Owned Business Participation" notation and yet a women-owned business did not win the bid for Inkster City Attorney. There is no genuine question of material fact that Defendants did not follow Inkster's Equal Opportunity Ordinance when they voted to terminate Plaintiff.

## III. Pretext

Third, Plaintiff argues that Defendants' proferred reasons for terminating him were mere pretext for racial discrimination. Collectively, Defendants expressed many concerns related to Plaintiff's competence, loyalty, and passion. Examples include Wimberly's testimony that Plaintiff had become too comfortable in the City Attorney position, that he would fall asleep at meetings, and that Plaintiff seemed to think the city owed him; and at the time Plaintiff was terminated he was under suspicion of filing a false police report to cover his own misconduct as City Attorney. Each of these statements does not need to be directly preceded by, 'I voted to terminate Plaintiff because . . .' when the gravity and relevance of each fact vis-à-vis Plaintiff's job performance speaks for itself. In his Motion for Reconsideration [74], Plaintiff cites his own summaries of why each Councilperson voted as they did. These self-serving summaries are not an accurate portrayal of the record as a whole and do not create a genuine issue of material fact about pretext.

Plaintiff re-raises arguments about his firm's capacity, scope of expertise, and affordability versus the Allen Brothers' Firm's capacity, scope of expertise, and affordability. There are no new arguments in Plaintiff's Motion for Reconsideration [74] and these issues were dispositively analyzed in the Court's previous Order [71]. There is no genuine issue of material fact that the Council's perception of the Allen Brothers' superior capacity and expertise motivated the decision to terminate Plaintiff.

**IV. Inkster's Policies and Customs**

    **1. Single Decision of a Legislative Body**

The Court previously stated, "a single decision does not constitute a policy." That statement was made in the context of an Order [71] wherein the Court explicated that Plaintiff had not created a genuine question of material fact that he was the object of racial discrimination. The Court's previous statement, fully teased out, stood for the proposition that a single decision to terminate a person on the basis of job performance does not constitute a policy of racial discrimination. In this case, the single decision of the policy makers that constituted official policy was the decision to terminate Plaintiff as City Attorney. In fact, it is true that it is the official policy of Inkster that Plaintiff is no longer the City Attorney, however, not on the basis of any improper reasons.

    **2. Equal Opportunity Ordinance**

Plaintiff re-argues that Crump's mistaken belief that Inkster's Equal Opportunity Ordinance was effective at the time of Plaintiff's termination constitutes a policy of discrimination. For the exact reasons explained in the Court's previous Order [71], Crump's mistaken belief is irrelevant to Plaintiff's case.

    **3. Alleged Custom of Race Discrimination**

Plaintiff alleges that he "proved" Defendant Hampton is prejudiced against whites in part on the basis of third-party Capela's conclusory accusation that

Defendant Hampton "viewed all City of Inkster business and employees through a prism of race." In no case can one person's bald accusation about another person's mindset prove anything about the second person's state of mind or motivation. This is especially true where the first person's statements reveal their own interpersonal problems with the second person.

The rest of the examples Plaintiff cites in this section of his Motion for Reconsideration [74] are equally un-compelling to establish a custom of racial discrimination by Defendants that is "so permanent and well-settled as to constitute a custom or usage with the force of law." *Doe v. Claiborne County, Tenn*, 103 F.3d 495, 507–08 (6th Cir. 1996). Plaintiff again attempts to rely on his own hearsay testimony, Louise Kolberg's hearsay testimony, and Capela's hearsay testimony that Defendant Hampton was racially prejudiced to support his custom argument. With regard to the Equal Opportunity Ordinance, as stated above, many of the Councilpeople believed it was totally defunct when they terminated Plaintiff. With regard to the conclusory allegations that black employees were treated more favorably than white employees, Plaintiff does not compare and contrast those cases to demonstrate that like cases were treated differently based on race, he simply lists them. People are and should be disciplined differently on the basis of qualitative differences between their situations. Plaintiff also summarily refers to past reverse

race discrimination cases against Inkster and different individual defendants that who are involved in this case without explaining how those cases could create a question of fact about how Defendants here created a custom of discrimination.

## V. Michigan Constitution

Plaintiff merely asserts the Defendants violated the Michigan Constitution. Plaintiff bases this conclusion on the presumption that Defendants discriminated. For the reasons about, that presumption is wrong.

## VI. Mixed Motive Analysis

Plaintiff relies on inadmissible evidence to support his claim for mixed-motive analysis. For the reasons stated above, the Court cannot rely on Ann Capela's hearsay testimony or her testimony about the motive or state of mind of Defendant Hampton.

## **Retaliation Claim**

In his Motion for Reconsideration [74], Plaintiff asserts similar arguments about causation, the honest belief rule, and municipal policy of retaliation as he did in his Response [56]. Accordingly, the Court relies on its reasoning as stated in its previous Order [71] addressing those arguments. The allegations against Plaintiff in the Greene suit were serious (e.g. filing a false police report), were outside the scope of his duties as City Attorney, and he was named individually, not in his professional capacity. Inkster was under no obligation to provide him with a defense and, therefore, not

providing him with a defense cannot be considered a retaliatory action. As to Plaintiff's policy-of-retaliation argument, the policy in play here would be more accurately characterized as a policy of not providing a legal defense to employees acting outside the scope of their employment

Accordingly, **IT IS ORDERED** that Plaintiff's Motion for Reconsideration [74] is **DENIED**.

**SO ORDERED.**

Dated: January 13, 2014

s/Arthur J. Tarnow
Arthur J. Tarnow
Senior United States District Judge